**ERNEST BERGER, v. WM. H. JACKSON, as Administrator ad Litem of the Estate of Letitia V. Graham, deceased.**

23 So. (2nd) 265                                    June Term, 1945
July 20, 1945                                              Division B
Rehearing denied Oct. 5, 1945.

252

*Whitaker Bros.* and *Cooper & Cooper,* for appellant.
*Mabry, Reaves, Carlton, Anderson & Fields,* for appellee.

BROWN, J.:

The appellant here was plaintiff in the court below. He brought suit against the appellee, Wm. H. Jackson, as administrator ad Litem of the estate of Letitia V. Graham, deceased. The suit was an action in assumpsit for money alleged to be owing plaintiff below by virtue of an agreement made by Mrs. Graham in her life time with the plaintiff to compensate him upon her death. The plaintiff and Riley J. McMaster were executors of the estate of Mrs. Graham, but when the plaintiff Ernest Berger filed this claim the County Judge appointed the appellee as administrator ad litem with reference to this particular matter, and appellee, as such administrator ad litem, rejected the claim; whereupon this action at law was instituted in the Circuit Court of Hillsborough County within twelve months from the first publication of notice to creditors.

Mrs. Letitia V. Graham, a resident of Hillsborough County, died testate, at an advanced age, on December 16, 1938. Within a few days after her death, Mrs. Beatrice Newport filed for probate in the County Judge's Court a purported will, and a few days later, a second will, which antedated the first, and a codicil thereto, was also filed in the County Judge's Court, which will, by a codicil thereto, named as co-executors Ernest Berger and Riley J. McMaster. The validity of the first will filed by Mrs. Newport, was hotly and vigorously contested. This litigation lasted for several years. The County Judge made an order that he would not appoint a personal representative of the estate until the validity of these respective wills had been duly determined, and appointed a curator on December 19, 1938. In his order the County Judge stated that he did not intend to admit to probate "any of the wills or codicils, theretofore filed or which may here after be filed in this court, of the said Letitia V. Graham" until a full hearing thereon and the determination by the court as to which is the true last will and testament of said decedent; and that "It is necessary that a curator be appointed to take charge of the estate of said Letitia V. Graham, deceased, until letters are granted for the administration of her said estate," and proceeded to appoint the First Savings and Trust Company of Tampa as such curator, and authorized and empowered said curator "to perform any and all duties or functions of an administrator or executor under such special orders of this court as may from time to time hereafter be entered in this cause." The court further directed the curator to file an inventory of the property of the estate, and that upon the qualification of the personal representative of the estate of the decedent, the curator shall immediately account to such personal representative and deliver to him all of the assets of the estate.

The litigation concerning the validity of what is referred to as the Newport will was vigorously waged and lasted for some three years. A vast amount of testimony was taken and documentory evidence adduced. The County Judge held that this will was invalid. Upon appeal, the Circuit Court held it to be valid, and on appeal from that judgment to this

court, the Circuit Court, was reversed. Meanwhile, said curator properly assumed its duties under the orders of the County Judge's Court and performed any acts which any administrator or executor would have been compelled to perform during that period. The curator preserved and protected the estate and paid out various sums amounting in all to about $100,000.00 for funeral expenses, for caring for the property of the estate, for court costs and attorneys fees, and for fees and commissions to it for performing many other duties and acts in the administration of said estate, as shown by the files and records in the County Judge's office. It was not until December 19, 1941, that this court entered its judgment reversing the Circuit Court and remanding the cause for further proceedings in accordance with its judgment and opinion. On May 22, 1942, Hon. T. Frank Hobson of the 6th Judicial Circuit, acting pro hac vice as Circuit Judge of the 13th Circuit by assignment of the Governor, duly entered an order whereby the former Circuit Court judgment was reversed, and the order of the County Judge, denying said petition of Mrs. Newport, was affirmed and remanded the cause to the County Judge's Court for further appropriate proceedings, whereupon the County Judge's Court resumed jurisdiction and probated the last will and codicil thereto of Mrs. Graham, dated June 19, 1934, (the codicil being dated October 6, 1936), and, on July 7, 1942, the County Judge's Court admitted said will of June 19, 1934, and the said codicil, to probate, and on December 22, 1942 issued letters testamentary to said Ernest Berger and Riley J. McMaster. During the period of its administration of said estate, the curator maintained the position that no letters testamentary could or should be issued by said County Judge's Court pending the final outcome and determination of the controversy over the validity of said Newport will. Plaintiff alleged that the defendant administrator ad litem, by succeeding in privity under the curator, is estopped from maintaining his 5th plea, which plea alleged that "letters testamentary or of administration were not taken out within three years after the death of said Letitia V. Graham, and this action was not brought until after three years from her death."

The facts above related were alleged in the defendant's replication to plaintiff's 5th plea, and other pleas.

The learned Trial Judge in his rulings on the pleadings held that plaintiff's cause of action was not barred by the three years statute of limitations, Section 95.11 (5) (e) Florida Statutes of 1941. He also held that the oral agreement, such as was sued on here, was not within the statute of frauds, Sec. 725.01 FS 1941, which pertains to an agreement that is not to be performed within the space of one year within the making thereof, etc. Appellee has filed cross assignments of error to these two rulings. In view of the case of Exchange Bank of Tampa v. Bryan, 122 Fla. 479, 165 So. 686 and Yates v. Ball, 132 Fla. 132, 181 So. 341 and other authorities herein after cited, we are not, on this record, prepared to disturb the court's rulings on those two questions. But the Circuit Court held that plaintiff was not entitled to recover because of Section 186 of the probate Act of 1933, now appearing as section 734.29 F. S. 1941.

The controlling question here is the first of the "questions involved" stated by appellant, which is in substance as follows:

"Is an estate unadministered within the intent, purview and meaning of Section 734.29 F.S. 1941, being section 186 of the Probate Act of 1933, (quoting the statute) where, within three years from the death of the testator, there has been filed in the Probate Court two proper petitions for letters testamentary and there has been as much litigation, disbursement of monies, determination of controversies, and exercise of jurisdiction by the Probate Court over the estate, as is set forth in, and indicated by, plaintiff's replication to defendant's specified pleas?"

This we think presents the controlling question here.

Section 734.29 F.S. 1941, being section 186 of the Probate Act of 1933, Chapter 16103 of the General Laws of 1933, reads as follows:

"Section 186. LIMITATION AGAINST UNADMINISTERED ESTATES. After three years from the death of any person, his estate shall be liable for any obligation or upon

256

any cause of action unless letters testamentary or of administration shall have been taken out within said three years; provided, however, that the lien of any· duly recorded mortgage and the lien of any person in possession of any personal property and the right to foreclose and enforce such mortgage or lien shall not be impaired or affected by the limitation imposed hereby, but the same shall bar the right to enforce any personal liability against the estate of the decedent."

We must give due weight and effect to the title of this section, which was placed at the beginning of the section by the Legislature itself, and in capital letters. Indeed we have already done so, as shown by what was said by Mr. Justice THOMAS, speaking for the Court, in his opinion in the case of Gilpen v. Bower, 152 Fla. 733, 12 So. (2nd) 884, which was:

"By referring to Section 186 of the Probate Act, Section 734.29, Florida Statutes, 1941, F.S.A. 743.29, we find that an estate *unadministered* for three years is not liable for debts excepting, only, liens of those in possession of personal property and recorded mortgages." (Emphasis supplied).

The heading of this section is not to be classed with words or titles used by compilers of statutes as a sort of index to what the section itself is about or has reference to, but it is the Legislature speaking and it says in effect that section 186 is intended to be a "limitation against unadministered estates." In the light of the facts as shown by this record, this estate was being administered upon by the Probate Court within a few days after the death of Mrs. Graham, when the Newport Will was filed for probate, and when a second and different will was filed for probate, and when the County Judge made his order that he would not issue any letters testamentary until it was determined which of these wills, if either, was a valid will, and when, within a few days after Mrs. Graham's death, the Probate Court appointed a curator who took charge of the estate and who performed many of the functions of an administrator or executor during the prolonged period of the will contest. It is not denied that this appellant acted promptly in the filing of his claim and within

the time allowed by law, after letters testamentary were granted.

Section 3 of the Probate Act of 1933 contains certain definitions, one of them reads as follows: "Administration refers to the administration of estates and also to all probate proceedings." Another definition reads: "Probate means not only probate proceedings pertaining to wills but also the administration of estates."

Section 119 of the Probate Act, being 733.15 Florida Statutes 1931, provides that all personal representatives, after taking out letters testamentary or of administration, shall cause a notice to be published for four consecutive weeks in the county wherein the letters have been granted, notifying all persons having claims or demands against the estate to file their claims in the office of the County Judge within eight calendar months from the time of the first publication of said notice, and Section 120 of the Probate Act, 733.16 F.S. 1941, allows eight months from the time of the first publication of the notice to creditors within which to file their claims or demands, and further provides that any such claim or demand not so filed within such eight months period shall be void.

The complainant, being the appellant here, not being responsible for the delay occasioned by the will contest, and in view of the Probate Court's order that it would not grant letters until after the validity of the respective wills had been determined, and after the court had promptly appointed a curator to preserve the estate and to perform certain functions which an administrator or executor would otherwise have had to perform, had the right to rely upon this section of the Probate Act which allowed complainants eight months after the publication of notice to creditors within which to file their claims. We are not aware of any section of the Probate Act which requires a claimant to file his claim until the personal representative shall have made the proper publication of notice to creditors under Section 119 of the Act. In so far as *the time* of filing claims is concerned, the only section of the Act which nullifies claims is section 120 of the Act above referred to, which provides that any claims or demands not filed within eight months from the time of the first publica-

tion of the notice to creditors shall be "void." Appellant complied with the requirements of Section 120. He filed his claim within the time required by that section. During the practically four years intervening between the death of Mrs. Graham and the publication of notice to creditors and the filing of this claim in the Probate Court, the estate did not remain unadministered, as above pointed out. It was not appellant's fault, in so far as this record shows, that letters testamentary had not been taken out within the three years period required by said Section 186 of the Probate Act, but the estate of Mrs. Graham was certainly not an unadministered estate during that period.

That section 734.29 F.S. 1941, being section 186 of the Probate Act of 1933, as shown by its heading, was intended to be a statute of limitations applicable to dormant or "unadministered" estates, is also indicated by Mr. Daniel H. Redfearn's comment on this section. On page 443 of his book on Wills and Administration of estates of Florida, Mr. Redfearn says:

"Prior to The Probate Act of 1933, after ten years from the death of any person, his estate was not liable for any of his debts unless letters testamentary or of administration had been taken out within said ten year period. This statute was repealed by The Probate Act of 1933, and the statute of limitations as to unadministered estates was reduced to three years."

And on page 442 of the same work, the distinguished author says:

"Section 272. Statute of Limitations. As shown in section two hundred sixty nine of this chapter, there is no limitation on the right of a legatee, devisee, or heir at law to claim his share or interest in the estate to which he may be entitled. However, it is necessary for a creditor to file his claim to keep it from being barred by the statute of limitations. The Probate Act of 1933 limits the right of a creditor to file a claim against the estate to eight calendar months from the date of the first publication of notice to creditors. If the claim is not filed with the county judge during said eight months' period, the claim or demand is void, even

though the personal representative has recognized such claim or demand by paying a portion thereof or interest thereon, or otherwise recognized the same."

In People v. Molyneaux, 40 N. Y. Rep. 53 Barber 9 113, the Court said:

"In this form of enactment (where section heading was inserted by the legislators when the bill was enacted) such statements are part of the law itself, and not in any wise extrinsic to the enacting clause. Their office is solely to control, limit and apply the succeeding provisions of the statute. To reject them, or to refuse to give effect to them, according to their fair import and understanding, would be to make the law, not to administer it."

It is true, as counsel have said, that the Probate Act does not define the word "unadministered;" nor does the dictionary. Nevertheless, its meaning is plain. It means "not administered," just as *un*necessary means *not* necessary. Ordinarily, administration of an estate begins when letters testamentary are granted, but as we have shown, the administration of Mrs. Graham's estate, in legal effect, began several years prior to the actual granting of letters. Of course, where *no* steps have been taken with reference to the administration of an estate within three years from the death of the testate or intestate, such an estate becomes an unadministered estate and section 186 of the Probate Act extinguishes all claims of creditors against such estate.

Recurring to the appellee's cross-assignment of error based on the court's sustaining of the appellant's demurrer to the appellee's fourth plea, which plea alleged that "the alleged *cause* of action did not accrue within three years before this suit," of course it is apparent that this plea was based upon the three year general statute of limitations. That section of the statute of limitations applies to the "cause of action" only. The court below was evidently of the opinion, and so are we, that where a cause of action accrues after the death of the person against whom it lies, the limitation does not begin to run until there is a grant of administration of the estate. A cause of action cannot be said to have accrued, within the meaning of that statute, until an action can be instituted thereon. There must be some person capable of suing or

being sued upon the claim in order for the statute to begin to run. See 24 C.J., 784; 45 Am. St. Reps., 695; 65 Am. Dec., 594, 595. See also Shambow v. Shambow, 149 Fla. 278, 5 So. (2nd) 454. Thus the 4th plea was not applicable or responsive to plaintiff's cause of action as set forth in the amended declaration.

The writer realizes that the questions raised in this case are not free from difficulty. The able briefs and arguments of the distinguished counsel for the appellee in this case and for the appellees in the companion case of Parks v. Berger, et al., as Executors, etc., as well as the very persuasive opinion rendered by the above Circuit Judge, have given the writer pause and considerable food for thought. But, however poorly this opinion may reflect it, it seems to us that the stronger and more applicable reasons require a conclusion different from that contended for by them, and justify our construction of the statute.

Reversed and remanded.

CHAPMAN, C. J., THOMAS and SEBRING, JJ., concur.